Okay, the court's last case today is 411-0013, the Department of Central Management Services v. Illinois Labor Relations Board. For the appellate, Mr. Weiner, for the appellee, Sharon Purcell, Jake Pomeranz. Did I pronounce that correctly? Are you two both arguing? And have you split your time up with the clerk? Excellent. I have the feeling that I've heard this song before. Well, it's a little bit different here in the sense that this whole case, I think, first of all, the evidence here is undisputed also, just flat out undisputed evidence. Well, we're dealing with engineers instead of lawyers, so that's one difference, correct? True, true, true. And we're dealing with SPSAs, which is the highest title in classification in Illinois government. So, it's very significant because the SBA class specification specifies that the SPSAs are intended in relia to, quote, manage a major program, close quote, and that a registered engineer within the classification, quote, plans, organizes, coordinates, and reviews the work of a large engineering and technical field staff engaging, conducting field investigations and inspections, and monitoring activities. The class specification also provides, quote, specifically excluded from this class are fully professional professionals, or major administrative responsibilities, and also excluded are positions subject to the provisions of collective bargaining contracts. So, basically, this classification, you can't be a member of it, because the bargaining unit, if you're an SPSA, they're specifically excluded. Okay, so if that's the case, why did the board certify? I think that they're disregarding that component of their job classification. Mr. Warner, could you explain one thing to me? There were 25 people who were being petitioned into this bargaining unit. There were three people who testified at the hearing. Correct. So, was there a stipulation somewhere that those job duties? Yes, there was an explicit stipulation. Okay, can you tell me where in the record that is? Yes.  Well, the three, the reason there were three was because there are three agencies involved. Okay. Natural resources, IEPA, and... DPH, I think. DPH, right. The reason I had, I don't have a stipulation, I don't have, I'm not looking at the right brief. I'm looking at the brief on the other page.  Okay. Okay, this is on pages three and four of our brief. This is a transcript, 8-9, and 219-220. It starts out with, did the party stipulate that the employed individuals under the classification title of Senior Public Service Administrator Option AD are professional employees within the meaning of Section 3N? Mr. Atterbury, yes. Mr. Daniels, yes. Mr. Pomerantz. Mr. Pomerantz is present here today. We would propose a stipulation that the other SBA Option 8Es, this is a 224-225, if called to testify, would testify with the testimony of that and the stipulations that have been entered, and that we understand that CMS will also supply a chart or a document showing which SBSAs have subordinates who have or are under the merit comp system, and an organizational chart showing the structure of authority. Mr. Daniels, the state will agree to that. We have Mr. Pomerantz here. There will be, there's no question that the stipulation that these would be representative. And I think that that's very, very significant. It shortens the hearing. You don't get involved in, you know, in cumulative, repetitive testimony. And we attempt, we have good relations with them, and we attempt to enter stipulations of that nature quite frequently. Okay, thank you, Mr. Atterbury. This case also is unique, unique before this court in the sense that, I'm not going to go into a discussion of all of the, that's set forth in our brief, all of the evidence as to what indicia of supervisory status qualifications are met. And then you get to the last issue, which is a preponderance of the time. And what's been happening is that in this case, it was testimony that for a majority of their time that, and this was without contradiction, that they spent a majority of their time, the SPSAs, quote, quote, tracking, monitoring, advising, and reviewing work of their subordinates. And this is not the first case. You have several coming up on it. But this is, this issue of what is the meaning of the term direct under that indicia of supervisory status. And what happened in this case and what's happened in several other cases is that the ALJ and the Labor Board are basically saying that if you oversee or monitor someone, you spend your entire day doing that, subordinates. In this case, one of them had 15 subordinates. If you, if you, that monitoring, overseeing function, particularly if it might be in a technical area like this, which is another basis for inclusion, not exclusion, into the bargaining, from the bargaining unit. But that isn't direction. That doesn't constitute direction. So like in this case, it's undisputed that they spent more than a majority of their time tracking, monitoring, and advising, and reviewing work of their subordinates. So therefore, by remedial mathematics, if they spend a majority of their time doing that, and that isn't direction, then they obviously haven't met the preponderance test or the majority test, whichever is first issued. But leaving that aside, the point is that, so by deduction, you're no longer a supervisor because you don't, you spend more than most of your time doing these other activities which are not supervisory in nature, and they're not, they don't involve directing. So that's what happened here. And so, you know, the argument, you know, by Mr. Tomrance, as acknowledged by the petitioner, page 18 of Asmy's brief, the ADs spend a majority of their time, quote, tracking, monitoring, advising, and reviewing the work of their subordinates, close quote, which is noted above. But they are not engaged with the necessary supervisory authority within the meaning of the act. So thus, under either judicial rendering or preponderance, they would not meet the statutory standard for exclusion of supervisors. I'm not kidding. I mean, this is like, you know, it's a catch-22. It's one of several ones, including independent judgment and a number of others that have been used to include people into bargaining unions. But the test in terms of all of these functions should not be rigidly applied. But in keeping with the purpose of the supervisory exclusion, which is, quote, the conflict of interest that arises when supervisors, who must apply the employer's policies to the subordinates, are subject to the control by the same union. Now, here you have the same union as Asmy. So it's not a different union. And that was a quote from the city of Sandwich case of 406 Illinois after 1006. But the seminal case, as you all know, when you start with supervisory analysis, you have to start with city Supreme Court case. And they were very, very clear that they found that the petition for employees in that case were supervisors because of their authority. Authority in managing their department created a possibility of conflicting loyalties. And what the Supreme Court held was, regarding these ranking officers that were at issue, the responsibility for directing the officers and for managing the operation of the department clearly aligns the ranking officers more closely with the chief than with the patrol officers. The authority to direct subordinate officers and to adversely impact these officers through discipline, which in this case was one of the, I think maybe the only initiative they found, that there was authority to discipline. Anyway, going back to the quote, though. Or other measures falling within the scope of union representation makes the nature and essence of the ranking officers' principle work substantially different from that of the patrol officers. It is this authority, authority, which creates a possibility of conflicting loyalties and which requires the exclusion of the ranking officers from the bargaining unit. 135-0 and I second this clause. It is that authority to use independent judgment rather than how often the supervisor exercises the authority, which is important. Again, quoting the Supreme Court at 518, quote, The potential for conflict of interest lies in the supervisor's authority to influence or control personnel decisions in areas most likely to affect the employment of subordinates and thus most likely to fall within the scope of union representation. The board's reliance upon the number of times such authority was exercised is improper. And we have, there's never been full recognition and compliance with that directive from the Supreme Court by the board. They demand that you supply documentary evidence and non-general evidence, specific evidence, as to each and every indicium. Now, in Village of Maryville at 402, that was from Village of Maryville, 402 Illinois AF 3rd 375, quoting from Freeport, Moreover, supervisors do not have to perform every possible task under the function of, quote, directing, close quote. All that is required are sufficient acts to create a possible conflict of interest between management and the employee's union. That's from Village of Maryville, 402 Illinois AF 3rd 375. Now, this court recently came down with what's now called another seminal opinion, I mean decision, it's PSA Option 2 case. And the PSA Option 2 case, I think, was like an 89-page opinion. This court found that the petition for employee directed his subordinates when the evidence showed that the employee had the authority to, quote, assign and monitor work, evaluate employees, and approve time off for his subordinates. Similarly, and that's at 202011 Illinois AF 090966. Similarly, in Village of Maryville, which we cited previously, the 5th District found that petition for employees directed and disciplined their subordinates by their authority to deny time off work requests, issue oral and written reprimands, and conduct oral and written performance evaluations. So at the hearings, the oral hearings, in this case, there was undisputed and rebutted testimony that they spent a majority of their time tracking, monitoring, advising, and reviewing the work of their subordinates. And that was the very basis upon which the board found that they didn't meet the preponderance test. So in conclusion, it was the undisputed testimony of DeWitt, Shuck, and Yarden, which, by extrapolation, included all the other SPSAs at issue. In addition to the documentary evidence introduced at the hearing, their testimony conclusively establishes that the SBA Option 8Es are engaged predominantly in supervisory functions and therefore should be excluded from the bargaining unit because they are supervisory employees under the Act. Moreover, the record is clear that the SBSA Option 8Es spend more than a preponderance of their time performing supervisory activities such as directing, disciplining, educating, rewarding, and approving overtime and time off requests over their unionized subordinates. As such, the SPSA Option 8Es will be in the exact same bargaining unit as their subordinates, same union for sure. The potential for conflict of interest is clear, and the ILRB urge in finding SPSA Option 8Es were not supervisors under the Act. Thank you very much. Thank you. You'll have rebuttal. Counsel? Good afternoon, Judge Tomrance. May it please the Court. It's well established by this Court in its rulings that the party that seeks to exclude employees from the benefits of collective bargaining bears the burden of approving each element necessary, in this case, to demonstrate that they are supervisors within the meaning of the Act. And the Act has a very specific set of tests for supervisory exclusions, and the test requires a detailed factual analysis, which is really not the role of this Court to engage in, frankly. That's the purpose of the Labor Board, to analyze those facts, to apply their expertise. The role of the Court is, as the Court has recognized repeatedly in this decision, is to see if there's any evidence that supports the decision of the Board. In this case, the Board really didn't need to go further than to find that there was no evidence in the record that established that these employees exercised independent judgment in their function. As counsel said, they spent the majority of their time monitoring the work of the other people on their team, engaging in direct engineering functions when it was a level of sophistication beyond what the other members of the team could do. There was no evidence indicating there was any use of independent judgment. There were no examples, no criteria. What about the grant of overtime? The grant of overtime, as the Board found, first of all, was de minimis in time. Let's get back to that. It was a flood in the Mississippi. The engineers were out there. There was no choice. You couldn't have them come back to Springfield and go back. But there are times when they're working in other places like Schaumburg or somewhere up around Chicago, and they have to call back and see if they're approved to stay overnight and continue working the next day. So it doesn't, you know, DeWitt or whoever it is, exercise independent judgment in deciding whether or not to approve that. Well, that would be interesting if such an example was given, but it wasn't. All he said was, when it's obvious that they need overtime, they tell me they're going to be here and I approve it. So we have no examples of what would happen had he ever denied it. There's nothing in the record. Well, maybe every time he's been asked, it was justified. Right. Let me talk a little bit about Freeport, which was mentioned by counsel. Freeport also involved the fire department employees. There was a lieutenant. The lieutenant clearly gave orders. He told people what to do. He directed them in the lay sense of the term. But the court said, well, that's because he's more experienced. He's had greater training in this. He's relying on his skill, his training, his professional expertise. He's not been vested by the employer with making the kinds of decisions that might bring them into conflict with the union. So in this situation, there's no evidence that these employees did anything other than act as the more experienced engineer on the projects. But DeWitt's a section chief, right? I think they were called section chiefs, at least one of them. DeWitt is. He had 15 people reporting to him. Correct. And there were a variety of different types of employees. Clerical, he had professional engineers. He had another AD who reported to him. Well, what's his job if he's not supervising these people who are in his section and he's the section chief? Well, all you would know from the record, which is all you do know because that's all we have and that's all the board had, was that he routinely reviews engineering work to make sure it meets the professional standards and the standards of the government. And he spends the majority of his time doing that. That's the work of his subordinates. He's reviewing the work of his subordinates. What else does a supervisor do? I guess that's what I'm having trouble with. What does the lieutenant at the fire scene do in the Supreme Court? He directs the team. But he doesn't do it with independent judgment as has been defined. First of all, it's in the statute. You need independent judgment. Secondly, the courts, starting with the Supreme Court, it's that independent judgment doesn't come into play. It isn't satisfied when you're just the most experienced worker on the team, when you're using your professional expertise. He's the section chief. That's his title. For sake of argument. There are repeated no examples of the exercise of independent judgment in this case. So the board, in determining that there were no examples of independent judgment, clearly has established that their decision is justified by the record or the lack of record. One point about what Mr. Weiner said, that the SBSA, I think he called it the highest ranking classification in state service. It's true it's the highest ranking civil service or personnel code classification. But, for example, the WIP reports to a division chief. The division chief reports to a deputy director. The deputy director reports to a director. There's also a labor relations and human resources section in that department. And that also has staff. So just a little perspective on what that is. I thought from the facts that the WIP reports to the acting division chief, who in turn reports to the deputy director. Is that what you said? Yes. And then the deputy director reports to the director. Right. Okay. Any other questions? I really have nothing else to say except that the evidence, I've discussed the evidence. There isn't any evidence. And so therefore the board's decision should be. Okay. Thank you. Good afternoon, your honors. I'm Sharon Purcell, assistant attorney general on behalf of the Illinois Labor Relations Board. The board's decision here is reviewable for clear error. So that is, its decision should be reversed only if the court is left with a firm and definite conviction that a mistake has been committed. In this case, the board correctly determined that CMS did not carry its burden of meeting all four prongs of the test for determining whether or not these employees are statutory supervisors. The question always is, do these employees' job duties trigger this definition? Do they fit within this statutory definition? And so there's four prongs to that, which are the employee's principal work is substantially different than that of his subordinates. He possesses authority in the employer's interest to perform at least one of the 11 supervisory functions that are set out in Section 3R of the Act, or to effectively recommend any one of those functions. He consistently uses independent judgment in performing or effectively recommending at least one of those functions. And because this does not involve police, the employer must prove that the employees devote a preponderance of their employment time to exercising that supervisory authority. The Act in the definition provides that with regard to police employment, the preponderance element is not necessary. They can be found to be supervisors even if there's no preponderance element met. But that is not this case. So all four of those have to be met. So the question is, when the employer presents these facts of reviewing, monitoring, whatever it is, do they then do that with independent judgment and do they then also meet a preponderance standard? If not, then they're not supervisory employees. If so, then they're supervisory employees and they can be excluded and should be excluded from the Act. The Act, it must be remembered, is inclusive. Section 2 of the Act sets forth a policy to give employees full freedom in choosing representation for collective bargaining. So every public employee is assumed to be eligible for inclusion in the collective bargaining unit. When an employer alleges that an employee or group of employees should be accepted under one of these really very specific exclusions that the legislature included in the Act, the definition for supervisor, it's pretty specific. There's tests that must be met. And that's because then you have a statutory supervisor. You may have somebody who runs an office or a division based on this person is really good at what they do. This engineer has a lot of experience. We're going to put him in this position. Everybody can rely on his experience, his skill, his knowledge, his expertise to bring all our projects to fruition. Yet, he may not be a statutory supervisor. Can I just review with you what the four things are? You have the preponderance of time. You have the independent judgment. You have one of the 11 in D-SHEV being a supervisor. What's the fourth one? The employee's principal work is substantially different than subordinates. So if those are all met, the employer, as Mr. Pomerantz explained, has the burden of bringing forward that evidence because they're the ones trying to exclude employees. So let's say in our case that we have before us, let's go through those four. Can you tell us where you think they were deficient in showing this? Clearly his work is different than his subordinates, I would say. Would you agree with that? Well, from the record, on exception to the board, nobody disputed that. So the board didn't address that. Then you look at are they performing these functions. Well, CMS claimed that they were directing and supervising. I'm sorry, disciplining. That was basically the two. And evaluating the employees because some of the times, depending on how they were evaluated, they would receive raises. I know that they had to have approval for some of the, if you were evaluating them to be exceptional or something like that, somebody else had to sign off on that. But if they were accomplished or... Acceptable, I think. Acceptable. They could do that on their own. Evaluation is not one of the discrete 11 criteria that are set forth in the Act. It's a component of direct. So if an employee is doing an array of things, then they may meet that supervisory, the directing criteria. But on its own, evaluation is not... But it would be a factor you would look at. Oh, sure. Absolutely. So what are the issues here then? Is it the independent judgment and the preponderance of the time? Are those the two things you really want us to focus on? Sure. The board said, well, what are these employees doing? And when they do it, for instance, I'm reviewing reports. Well, how am I reviewing reports? Am I showing independent judgment? Or, I mean, is there evidence of that? And, again, the employer has to bring that evidence. Or, are these reports being reviewed for the facts are accurate? You're studying for the facts accurately. Or is the grammar... Are we all going to understand what this says? That's pretty... That wouldn't be a supervisory function? Statutorily? Statutorily. Supervisory? No. Because, you know, grammar is good grammar. What the code... Did you put down the code, for instance, maybe the federal regulation provision, that this particular inspection has found maybe there's a problem here? You know, there was an asbestos investigation, and I think that was one of the exhibits in evidence. And when you look at this memo, et cetera, here's the code. Here's what the federal code requires for when you're doing this kind of work. Here's what happened. Here's what we found. So, I mean, it's very regulated. And so whether or not... I mean, that may seem... I mean, it's lay supervisor. You have this person who knows the job, and so they're going to use that superior skill, knowledge, and expertise and bring that to bear. And actually, you know, give the subordinates the benefit of that superior knowledge and expertise. Let's say the section chief is getting reports from an engineer who reports to him, and the report is not adequate. And he reviews the report, and the grammar is poor, and he's missing statutory citations to the code, or whatever it is. He goes back where he's evaluating that employee based on the reports he's reviewing. Isn't that part of a supervisor's function? But again, we don't have that evidence. The board has to work with the evidence that it has. So, I mean, in any particular circumstance, I mean, something might rise to a level, but then again, you've got the preponderance problem. Can't the board draw some reasonable inferences? I'm sorry? Can't the board draw some reasonable inferences? The board can, well, I mean, if you're saying it would be a reasonable inference to say that, okay, this shows supervisory authority, but, you know, it's the board's, but the idea then that it's also a reasonable inference to say that this doesn't show supervisory authority because it does not rise to that level. And I believe in state police, I think that's the right case, out of this district in 2008. Well, you know what, if there's different reasonable inferences that can be drawn from something, you know, it's not, that's not clearly erroneous then when the board decides to take that reasonable inference. So... So the fact they didn't draw a reasonable inference based upon what you say the evidence was is not clearly erroneous. Was it clearly erroneous for them not to have done so? Well, I think that they did draw a reasonable. I mean, I think it's what that evidence shows is... What was the reasonable inference they drew then? The evidence is that we don't have evidence of how this is independent judgment, and also, I mean, there's always the... So if there's not the independent judgment and you're not... Then the reasonable inference is that this is not supervisory. It's lay supervisory. I mean, it looks like a supervisor, but we're talking about the exclusion from the bargaining unit, which is the statutory supervisor. So it's a different creature. It's a legislative creature that we're talking about, a statutory supervisor. And because the act is inclusive, not exclusive, the board has to look at, did the party seeking to exclude these employees meet that burden that they need to meet? And also, the board can only... They have to look at... They can't collapse the prongs of the test and say, well, the undisputed facts are they review, because they're looking at some kind of reports, and then we're not going to ask, are they using independent judgment? Are they spending a preponderance of their employment time to that? The board can't do that. The board has to administer the act in accordance with what the act requires. And the act requires those four prongs to be met to meet this test, this element of this test. Okay, counsel, you're out of time. Thank you. Mr. Weiler, do you have any rebuttal? Always your honor. I'll get the last word. Actually, just to answer your question about evaluations, actually that can be applied in three different areas. It can be applied under direct, because you evaluate them and you direct them to do certain activities or refrain from doing it. It can also be a component of reward, where there's an economic benefit that's added. And it can also be a part of discipline, particularly if you're saying that, you know, if you engage in these activities in the future, it may result in disciplinary action, including dismissal or whatever, some disciplinary sanction for what they've done in the evaluation. Going to the overtime issue, if you look at my brief at pages 11 and 14 and 16, 11 is DeWitt. He decides overtime on a case-by-case basis, and the outcome is never guaranteed. He goes into it. He's denied it. He's granted it. So it was represented to you. It's contrary to the record. Same on page 14. Chuck can approve overtime. He frequently approves it, but his approval is not automatic. And depending on budget, he will deny it or grant it. Your unit, page 16, says he was denied overtime. He has denied overtime requests if they are inappropriate. So, I mean, they do all those things. Then you go into the area of independent judgment. Let me address that very quickly to you, because that's one of the catch-22s now. So even if we do these things, if we don't use independent judgment, we're out of it. Same with the skill. If you're advising someone, the board of health, if you're advising someone using your technical superior skill, knowledge, and expertise, that doesn't count. That doesn't make you a supervisor. You can't use that to be a supervisor. I'm telling you, all these quagmires, this maze that we have to get through, and there's no end. There's no out of the maze. We're always in the maze like Harry Potter. The oral testimony as to the independent judgment, the oral testimony at an exhibit established that DeWitt uses his independent judgment to engage in several indicia of supervisory status, in that he, one, reviews his subordinates' work. This is on page 21 of my brief. Two, trains subordinates. Three, evaluates his subordinates without guidance from his superiors, and independently creates his own scores and objectives for his subordinates, has given evaluations with respect to his merit compensation employee, resulting in receiving a paid bonus due to accomplished rating given by him, authorizes overtime requests, and is the first-line implementer of discipline, and he's issued reprimands to his subordinates for misuse of governmental property, misuse of sick time, resulting in DeWitt placing a subordinate in an approved status. Similarly, the hearing testimony is established that Chuck uses his independent judgment, page 22 of my brief. And these are all cited to reference and exhibit sites in my brief. Similarly, the hearing testimony demonstrates that Chuck uses his independent judgment to engage in several initiatives to correct status. As you said, you only need one. We have several. Directs his subordinates' work. Reviews his subordinates' work. Decides his subordinates' time requests. Evaluates his multiple merit compensation subordinates. And unilaterally decides which employees are accomplished or rating their results and receiving an additional $150 per month in compensation. Likewise, the hearing testimony demonstrates that Jordan uses his independent judgment to engage in several initiatives to improve his status, and that he spends 70% to 80% of his time directing his subordinates and reviewing their work product, completes annual performance rules with the same performance evaluations, with the same consequence of you get money if you accomplish rating, and also decides his subordinates' time off requests. In this case, these people, these SPSAs, are supervisor employees. It was clearly erroneous to disregard the testimony and evidence in the record and say they should be included in bargaining. Thank you. Thanks to the three of you. The case is submitted. The court stands in recess until further call.